ELIZABETH MILLER MADDEN (now ELIZABETH MILLER PETERSON), appellant,

*v.*

ELMER J. MADDEN, respondent.

[Submitted October 27th, 1944.   Decided January 4th, 1945.]

On appeal from a decree of the Court of Chancery advised by Herr, A. M., who filed the following opinion:

"In this cause the petitioner, Elizabeth Miller Madden (now Peterson), secured her decree *nisi* for absolute divorce against the defendant, Elmer J. Madden, on August 9th, 1938, and her final decree on November 10th, 1938. By the provisions of the decree *nisi* she was awarded alimony at the rate of $12.50 per week. On November 17th, 1942, she brought proceedings in contempt against defendant for his failure to pay a total of $1,862.50 (accumulated arrearages up to that date under the order of August 9th, 1938). The proofs filed on defendant's behalf on the contempt application indicated that his default had been due to his financial inability to comply with the terms of the order, rather than to any willful non-feasance. Accordingly, a consent order was entered on December 8th, 1942, providing that 'no disposition be made for the present of the application for contempt, but that the defendant be and he is hereby required to make payment to the petitioner in conformity with the existing decree of August 9th, 1938, of the sum of $12.50 per week from November 17th, 1942, * * *' and 'that petitioner's assent to the making of this order shall be with-

out prejudice to her rights to demand payment of alimony in arrears.'

"On the same day on which this last-mentioned order was made (December 8th, 1942) petitioner married one Peterson. She did not disclose to defendant the fact that she had remarried, but continued to accept his alimony payments in the total sum of $240. Defendant's last payment was made on April 3d, 1943. On October 13th, 1943, petitioner instituted an action at law against defendant in the Essex County Circuit Court to recover the sum of $1,695, the total of the arrearages of alimony accrued up to the date of her remarriage on December 8th, 1942, less the $240 thereafter paid by defendant.

"Defendant moved in the Circuit Court to dismiss the complaint on the grounds that the subject-matter of the suit was still pending and undetermined in Chancery, that the Circuit Court had no jurisdiction to entertain the suit because it arose out of a decree of the Court of Chancery, and that the Court of Chancery has exclusive jurisdiction to enforce its own decrees. The Circuit Court declined to strike the complaint.

"It is not the function or intention of this court to question the soundness of the adjudication of the Circuit Court. But that adjudication was necessarily limited to the assertion of its own jurisdiction. It did not decide that this court lacks jurisdiction of the same subject-matter, or that equitable defenses may not exist beyond the jurisdiction of the Circuit Court to consider.

"It is axiomatic that this court has jurisdiction. It made the alimony order upon which petitioner's action at law is based, and retains a continuing jurisdiction to modify and to enforce it. *Parmly* v. *Parmly, 125 N. J. Eq. 545.* Having secured her order in this court, petitioner will not be permitted to prosecute her action at law touching the same subject-matter. See *Brengel* v. *O'Toole, 101 N. J. Eq. 449.* Particularly should she be enjoined because, having accepted the benefit of the order under the statutory limitation that her right thereto would cease upon her remarriage, she now seeks by her action at law to rid herself of that limitation,

which can be enforced only in this court, and to escape other equitable defenses beyond the jurisdiction of the Circuit Court to consider.

"It is clear that such equitable defenses do exist, and that they are both of a negative and of an affirmative character. See *Pom. Eq. Jur. (4th ed.)*, §§ *1360-1362*. As to the negative equitable defenses (available to defendant only in this court when and if petitioner brings proceedings here touching her alimony) see *Duffy* v. *Duffy, 19 N. J. Mis. R. 332*, and cases therein cited.

"Defendant's affirmative equitable defense is his right to secure an order from this court under *R. S. 2:50–38* vacating and annulling the original alimony order because of the petitioner's remarriage. Defendant now moves on notice for such an order, *nunc pro tunc* as of the date of the entry of the alimony order. Petitioner argues that no order can properly be made which will have the effect of abolishing her right to collect arrearages accrued prior to her remarriage.

"The statutory provision (*R. S. 2:50–38*) is as follows:

" 'If after the decree of divorce the wife shall remarry, the court of chancery shall not make any order touching the alimony of such wife except that the court of chancery, upon application of the former husband, on notice and upon proof of the marriage of the former wife after the decree of divorce, must modify any order or decree touching the alimony of the former wife by vacating and annulling any and all provisions in any such order or decree, or both, directing the payment of money for the support of the former wife.' (*L. 1933 ch. 145 p. 296 ¶ 1.*)

"The statute requires this court, on proper application by the former husband whose divorced wife has remarried, to modify any alimony order or decree 'by vacating and annulling any and all provisions' for the payment of alimony. It makes no exception where the effect of such nullification is to obliterate unpaid arrearages of alimony, whether accrued before or after the former wife's remarriage.

"Words used in a statute are to be given their ordinary meaning unless it clearly appears from other parts of the statute that some other meaning is intended. *Fedi* v. *Ryan, 118 N. J. Law 516; McGowan* v. *Metropolitan Life Insur-*

*ance Co., 60 N. J. Law 198; Rudderow* v. *West Jersey Ferry Co., 31 N. J. Law 512; Finnegan* v. *State Board of Tax Appeals, 131 N. J. Law 276.* Webster defines the word 'annul' as meaning 'to reduce to nothing; to annihilate; obliterate; blot out;' 'to make void or of no effect; to nullify; to abolish.' *Webster's New Int. Dict. (2d ed.).* The judicial definitions of the word are in accord with its ordinary meaning as defined by Webster. *3 Words and Phrases, (Perm. ed.) 497, et seq.* The statute forbids the making of any order 'touching the alimony,' which of course includes orders for the fixing of the amount of the arrearages, orders in contempt and all other orders intended to enforce collection, a prohibition which is inconsistent with the continued vitality of the original alimony order and clearly indicative of the legislative intent that the wife's remarriage puts an end to all of the husband's obligations. Alimony is but the judicial admeasurement of the husband's obligation to maintain his former wife periodically out of his income. If it appears that she had maintained herself for a considerable period of time without having received the allowances fixed by the court as alimony it is always a matter of equitable consideration (in cases which are not affected by the statutory mandate) whether the defaulting husband should be forced to pay arrearages and to what extent. In this state arrearages of alimony do not become vested in the former wife or take on the attributes of a judgment for the payment of a fixed sum until this court so orders. No such order was made in this case. *Barber* v. *Barber, 21 How. 582; 16 L. Ed. 226; Lynde* v. *Lynde, 181 U. S. 183; 45 L. Ed. 810; Sistare* v. *Sistare, 218 U. S. 1; 54 L. Ed. 905; Van Buskirk* v. *Mulock, 18 N. J. Law 184; Rooney* v. *Rooney, 102 N. J. Law 551; Duffy* v. *Duffy, 19 N. J. Mis. R. 332.*

"It is my judgment, therefore, that the statute makes it mandatory on this court, as well as exclusively within the jurisdiction of this court, to grant defendant's application to annul the alimony order *ab initio,* so as to eliminate all arrearages accrued thereunder. An order will be advised accordingly, by which the petitioner will be enjoined from prosecuting her action at law. The defendant is entitled to

the injunction not only because he has prevailed upon his affirmative equitable defense, but because of the existence of negative·equitable defenses available to him only in this court. 'When it is apparent that the controversy, in addition to its legal aspect, involves some equitable estate, right or interest which is exclusively cognizable by a court of equity, so that a complete determination of the issues cannot be made by a court of law, it is well settled that equity not only may, but must, interfere at the suit of the party in whom the equitable estate or right is vested, and restrain the action at law, and decide the whole controversy. This is so when the defendant at law has a purely equitable defense which the court of law will not recognize or enforce, and especially when he is entitled to some affirmative equitable relief which will clothe him with a legal right or title, and thus defeat the legal action brought against him.' *Pom. Eq. Jur. (4th ed.), § 1362."*

*Mr. Michael G. Alenick,* for the appellant.

*Mr. Meyer M. Semel,* for the respondent.

PER CURIAM.

The decree under review will be affirmed, for the reasons stated in the opinion of Advisory Master Herr.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 13.

*For reversal*—None.